**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| VIRGINIA NUTT, | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 1:03-CV-42 (WLS) |
| | : | |
| GOLDEN PEANUT COMPANY, LLC, | : | |
| LAMAR CRUTCHFIELD and BOBBY | : | |
| WIGGINS | : | |
| | : | |
| Defendant. | : | |

_____

## ORDER

Currently before the Court is Defendants Golden Peanut Company, LLC, Lamar Crutchfield and Bobby Wiggins' Motion for Summary Judgment. (Doc. 42.).

For the reasons stated below, Defendants' Motion is **GRANTED in PART and DENIED in PART**.

## PROCEDURAL SUMMARY

The instant case before the Court is a complaint by Plaintiff Virginia Nutt against Defendants under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, 42 U.S.C. §2000e, *et. seq.*; and the Americans With Disabilities Act of 1990, 42 U.S.C. 12101, *et. seq.* alleging sexual discrimination and discrimination based on her disabilities. (*See also*, Doc. 1). Specifically, Plaintiff alleges Defendants' discriminatory actions directly led to her resigning her job; and that Defendants' conduct constitute an actionable constructive discharge.

Plaintiff filed charges of discrimination with the appropriate administrative agency within 180 days of the occurrence of the adverse employment actions of which she complains. (Doc. 1). On or about December 5, 2002, the Equal Employment Opportunity

Commission issued a Right to Sue letter to Plaintiff.  Plaintiff received the right to sue letter on December 9, 2002 and brought the instant case before the Court on March 6, 2003.


## JURISDICTION and VENUE

Plaintiff invoked the Court's jurisdiction in her complaint pursuant to 28 U.S.C. §1343(a)(4), 42 U.S.C. §2000e, *et. seq*., and 42 U.S.C. §12117(a).  This Court is also the proper venue in this case pursuant to 28 U.S.C. §§ 90(b), 1391.


## FACT SUMMARY

Plaintiff is a white female resident of Turner County, Georgia. (Doc. 1.)  Defendant Golden Peanut Company ("Defendant Golden Peanut") is an agribusiness company doing business in the State of Georgia.  *Id.* Defendant Golden Peanut has employed more than 500 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.  *Id*. Defendant Lamar Crutchfield ("Defendant Crutchfield") and Defendant Bobby Wiggins ("Defendant Wiggins") are both residents of the Middle District of Georgia. *Id.*

Plaintiff was hired by Defendant Golden Peanut on April 8, 1998 to work on the scales (weighing trucks in and out, doing paperwork, filing and dispatching) and to perform light cleaning chores around the office at Defendant's Ashburn, Ga. plant.

I.   **Sexual Harassment Claims**

At all relevant times during Plaintiff's employment, Defendant had in effect a sexual harassment and sex discrimination prevention policy which Plaintiff acknowledged by signing the same on April 8, 1998.  Said policy has instructions for employees on procedures for reporting sexual harassment; and Plaintiff was aware of persons she could contact if she felt she was the victim of harassment or discrimination.  Defendants Crutchfield and Wiggins allegedly often made off-color comments and sexually suggestive jokes in

Plaintiff's presence while at the worksite owned and operated by Defendant Golden Peanut. Defendant Crutchfield allegedly made jokes which referenced specific body parts; including, but not limited to "boobs" and "butt."  Defendant Wiggins allegedly made jokes about his manhood and sexual prowess; including, but not limited to: "I'm big" and "I'll pick you up and we'll go riding around."  Defendants Crutchfield and Wiggins never touched Plaintiff or asked her to have sex with them.  Plaintiff did not complain to either Defendants Crutchfield or Wiggins about their respective conduct.  Plaintiff reported the aforementioned incidents to her supervisors, including office manager Barbara Loper.  It is unclear, however, the method, the frequency, and the details with which Plaintiff reported these incidents. Plaintiff stated in her deposition that their conduct had no bearing on her decision to quit her job for Defendant Golden Peanut on April 24, 2002.  Plaintiff had received off-color cartoons at her work station on at least one occasion from persons not related to the instant action; it is not clear whether or not she exhibited them.

On or about April 24, 2002, Barbara Loper paid for a professional massage therapist, a female, to come to Defendant Golden Peanut's office to offer neck massages as a gift to the female office staff for Secretary's Day.  During the massages, the recipients were fully clothed while they sat in a chair.  All of the massages were voluntary, and all female office workers partook of the offer except Plaintiff.  Plaintiff declined a massage in part due to a conversation she had with Wayne Sims[1] who indicated that hiring a masseuse on the job would not be tolerated; the suggestion being that it was a form of sexual harassment.

## II.      Disability Claim

Approximately a year after her employment began, Plaintiff began to complain of back pain allegedly exacerbated by cleaning duties assigned to her.  At some point after August 8, 2001, Plaintiff presented to Defendant Golden Peanut a physician's excuse signed by Dr. James W. Scott, dated August 8, 2001, indicating that she was restricted from

---

[1]      The record is unclear as to who Wayne Sims is in relation to the parties.

3

bending, sweeping and vacuuming and limited to lifting no more than ten pounds.   In response to Dr. Scott's excuse, Defendant accommodated Plaintiff by not requiring her to bend, lift more than ten pounds, sweep or vacuum. Plaintiff testified she had been physically able to handle whatever duties had been assigned to her until April 24, 2002, when she was asked by Barbara Loper to clean the office windows.  Plaintiff advised Barbara Loper and Freddie McIntosh, a co-worker, that she did not believe that she was physically able to clean windows, at which point Ms. Loper advised her that she would have to undertake the task or work it out with Betty Turner, a co-employee with similar duties.  Plaintiff became upset at this point, asked to take vacation days, and left Defendant Golden Peanut's premises. Plaintiff did not present any documentation of a restriction on washing windows to Defendant Golden Peanut until after she left its employ.

Additionally, Plaintiff is hearing impaired. Plaintiff contends that on at least two occasions, she reported to supervisor Barbara Loper that co-workers Betty Turner and Stacy hid her phone which enabled her to hear properly and perform certain job duties.

**III.    Termination of Employment**

The parties disagree as to whether Plaintiff initiated a telephone call to Brenda Fortson, a secretary in the front office, effecting a voluntary resignation by instructing her to put her remaining vacation pay in a final check.  Additionally, the parties disagree as to whether Plaintiff told Barbara Loper in a second conversation that she would not be returning to work.   At some point, Plaintiff and Defendant Golden Peanut came to an understanding that Plaintiff would not return to work.

It is clear that neither a separation notice was prepared indicating that Plaintiff had resigned, nor that such a separation notice was provided to Plaintiff.   It is also clear that Plaintiff wanted to return to her job or alternately requested the purported separation notice

4

to be "corrected"[2].    No one associated with Defendant Golden Peanut told Plaintiff that she

was being fired or terminated for any particular reason.    Also, Plaintiff states that she

"wanted to come back to her job with different duties, but did not tell anyone with

Defendant Golden Peanut about her wishes."   According to the record, Plaintiff neither did

nor said anything specifically to Defendant about returning to work.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986).  An issue is "genuine" if the quantum and quality of proof

necessary to support liability under the claim is raised.  Allen v. Tyson Foods, 121 F.3d 642,

646 (11th Cir. 1997).  A fact is "material" if it hinges on the substantive law at issue and it

might affect the outcome of the nonmoving party's claim.  Anderson v. Liberty Lobby, 477

U.S. 242, 248 (1986); *see also* Allen v. Tyson Foods, 121 F.3d at 646.  A judgment is

appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of

persuading the Court that there is a genuine issue of material fact on an essential element of

the claim. *See* Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 804 (1999);

Celotex Corp. v. Catrett, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of

material fact. Celotex Corp. v. Catrett, 477 U.S. at 323.  The movant can meet this burden

by presenting evidence showing there is no dispute of material fact or by showing, or by

pointing out to, the district court that the nonmoving party has failed to present evidence in

support of some element of its case on which it bears the ultimate burden of proof. *Id.* at

---

[2]      Plaintiff offers no additional information as to what she would have the purported
separation notice to state once corrected.

322-24.  Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324.  To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict.  Celotex Corp. v. Catrett, 477 U.S. at 322-23; Allen v. Tyson Foods, 121 F.3d at 646.  However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

## LEGAL ANALYSIS

### I.    Title VII Sexual Harassment Claim

Plaintiff alleges she was subject to a hostile work environment of sexual harassment based on off-color jokes allegedly told in her presence by two individuals, Defendants Crutchfield and Wiggins; and separately based on a workplace incident regarding a professional massage therapist.

To prevail on a Title VII claim of sexual harassment, Plaintiff must show that: 1) she is within a protected class; 2) she has been subject to unwelcome sexual harassment; 3) the harassment was based on her sex; 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and to create a hostile work environment; and 5) a basis for holding the employer liable exists.  Husley v. Pride Restaurants LLC, 367 F.3d 1238, 1244 (11th Cir. 2004).

It is undisputed that Plaintiff, a woman, is within a protected class.  Plaintiffs and

6

Defendants disagree as to whether Defendants Crutchfield and Wiggins' off-color jokes and remarks constitute sexual harassment.   A reasonable trier of fact when viewing the evidence in a light most favorable to Plaintiff could conclude that Defendant Crutchfield's jokes about "boobs" and "butt" and Defendant Wiggins' remarks that "I'm big" and "I'll pick you up and go riding around" when told in Plaintiff's presence in her work environment constituted sexual harassment.   A reasonable trier of fact, however, would not find the offer of a neck massage by a professional massage therapist in the circumstances shown to likewise constitute sexual harassment.

Finding that Plaintiff has proffered sufficient evidence such that a jury could find she has been subject to sexual harassment, the evidence could also support a finding that Plaintiff was harassed at least in part because she is a woman.

Plaintiff contends that repeated subjection to sexual comments and jokes and unwelcome harassment about which her supervisors laughed were sufficiently severe and pervasive to effectively change the terms and conditions of her employment and create a hostile work environment.  In Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998), the Supreme Court held that to be actionable under Title VII, a hostile work environment must be both "objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so."  A reasonable trier of fact may find individual defendants' conduct to have created a hostile work environment. The evidence presented by both parties also raise genuine issues of material fact as to whether Plaintiff perceived individual defendants' conduct to have been sufficiently severe and pervasive so as to create a hostile work environment notwithstanding Plaintiff's deposition testimony.

The Court notes that Plaintiff unquestionably states that the individual defendants' conduct had no bearing on her decision to quit her job.  Accordingly, there remain no genuine issues of material fact as to whether this conduct was a factor in Plaintiff's

7

constructive discharge claim.  Plaintiff's statements, however, are not conclusory on the issues of whether she in fact perceived their conduct to be sexual harassment or whether their alleged harassment was so severe and pervasive as to create a hostile work environment.   Notwithstanding Plaintiff's statements, the remaining evidence presented, when viewed in a light most favorable to Plaintiff, could reasonably support a finding by the trier of fact that  Plaintiff believed that she had been subject to a hostile work environment.  The jury may also consider the contributory role, if any, that Plaintiff's own off-color cartoons played in creating her work environment.

On the other hand, the massage therapy offer, which Plaintiff also offers as evidence of a hostile work environment, was provided as a gift by a female supervisor to an all female staff without any sexual connotations[3].  As to the massage therapy, there remain no genuine issues of material fact as to whether this conduct was a factor in Plaintiff's constructive discharge claim.

When the alleged harassment is committed by co-workers and/or non-employees who are present in the employer's work environment, Plaintiff must show that Defendant had either actual or constructive notice of the harassment and failed to take immediate corrective action. *See* Watson v. Blue Circle, 324 F.3d 1252, 1259 (11th Cir. 2003). More specifically, Defendants contend that because Plaintiff did not complain to either Defendants Crutchfield or Wiggins; and that neither of the individual defendants made any sexual advances or threats toward her that their conduct cannot be viewed as sexual harassment. Plaintiff did not complain to either Defendants Crutchfield or Wiggins about their respective conduct.  Plaintiff allegedly reported the aforementioned incidents to her supervisors, including office manager Barbara Loper.   Genuine issues of material fact remain as to the method, the frequency, and the details with which Plaintiff reported the alleged sexual

---

[3]      The massage therapy involved a neck massage by a female massage therapist with the employee seated, fully clothed, and seated in a chair in the office area.

harassment to supervisors at Defendant Golden Peanut, including her supervisor Barbara Loper, and their respective reactions to her reports. At the least, a reasonable trier of fact could find that Defendant Golden Peanut had actual or constructive notice of the alleged sexual harassment.

In light of the evidence, most specifically Plaintiff's deposition, the Court **GRANTS** Defendants' motion for summary judgment regarding the issue of a hostile work environment as a contributory factor in Plaintiff's constructive discharge claim.  On the stand-alone issue of whether Plaintiff in fact endured a hostile work environment due to the individual defendants' conduct , the Court **DENIES** Defendants' motion for summary judgment as there remain genuine issues of material fact regarding Plaintiff's *prima facie* case.

## II.     ADA Claim

To prevail on a claim under the ADA, Plaintiff must show that: 1) she has a disability; 2) that she was qualified to be a scale operator; and 3) that she was discriminated against because of her disability. *See* Taylor v. Food World, 133 F.3d 1419 (11th Cir. 1998). A "qualified individual" under the ADA is a person who with or without reasonable accommodation can perform the essential functions of the job. *Id.*

If Plaintiff establishes a *prima facie* case of discrimination under the ADA, the Defendant then bears the burden of producing a legitimate non-discriminatory reason for the adverse employment action. Hilburn v. Murata Elecs. North America, 181 F.3d 1220, 1226 (11th Cir. 1999).   If Defendant produces a legitimate reason, Plaintiff then bears the burden of persuading the Court that the reason was pretextual. Berman v. Orkin Exterminating Co., 160 F.3d 697, 701-02 (11th Cir. 1998).

### 1.       Hearing Disability

Plaintiff has demonstrated that she has a hearing disability.  Defendants have acknowledged Plaintiff's hearing disability by providing her special telephone accommodations.   With the accommodations Defendant provided, Plaintiff was able to perform her job duties.  Plaintiff is a qualified individual under the ADA.

While Plaintiff puts forth evidence that may suggest that fellow employees harassed, inconvenienced or otherwise made it more difficult for her to perform her job duties by hiding her telephone, she has not adequately raised a genuine material issue of fact regarding her hearing disability such that a reasonable trier of fact could conclude that Defendants discriminated against her because of her hearing disability.  Plaintiff fails to make a *prima facie* case for an ADA claim arising out of her hearing disability[4].

Defendants' motion for summary judgment on the ADA claim arising from Plaintiff's hearing disability is therefore **GRANTED**.  Plaintiff raised the ADA issue as an independent claim and not as a part of a hostile work environment claim.  The Court, therefore, does not consider it as such.

## 2.    Back Impairment

Defendants do not concede that Plaintiff's back impairment adequately constitutes a disability under the ADA.   Plaintiff effectively argues that Defendants should be estopped from denying that her back impairment constitutes a disability under the ADA because they were aware of physician imposed restrictions on physical activity, as evidenced by their previous accommodations for said restrictions.   The record states that Plaintiff was

---

[4]       Plaintiff's hearing disability had nothing to do with window washing.  It is therefore irrelevant to any remaining claims she asserts.

restricted from bending, sweeping and vacuuming and limited to lifting no more than ten pounds.   In response to Dr. Scott's excuse, Defendant accommodated Plaintiff by not requiring her to bend, lift more than ten pounds, sweep or vacuum.

On April 24, 2002, Barbara Loper asked Plaintiff to wash windows in the office. Plaintiff then told Barbara Loper and Freddie McIntosh, a co-worker, that she did not believe that she was physically able to clean windows, at which point Ms. Loper advised her that she would have to undertake the task or work it out with Betty Turner, a co-employee with similar duties.  At this point, Plaintiff became upset, asked to take vacation days, and left Defendant Golden Peanut's premises.

Plaintiff's subjective assessment that she would not able to wash windows is insufficient standing alone to establish a disability or a requirement that Defendant accommodate her accordingly.  To successfully establish ADA protection, Plaintiff is required to show that she requested an accommodation and was denied.  "It is insufficient to merely submit evidence of a medical diagnosis of an impairment." Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 198 (2002).  Even when her employer is aware of the impairment, "Plaintiff bears the burden of proposing an accommodation that would enable [her] to perform the job effectively, and that is feasible for the employer." *See* Mays v. Principi, 301 F.3d 866, 871 (7th Cir. 2002), *citing* Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001).   Even if, *arguendo*, Plaintiff establishes that her back impairment is a disability for the reasons and purposes previously accommodated by Defendant Golden Peanut, she fails to meet her burden of proposing an adequate accommodation that would have enabled her to do her job effectively with respect to washing windows in the office.

11

Therefore, Defendants' motion for summary judgment on the ADA claim arising out of her back impairment with respect to window washing is **GRANTED**.

**III.    Constructive Discharge Claim**

A constructive discharge occurs when a discriminatory employer imposes working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 77 (11th Cir. 2003), *citing* Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997).   By Plaintiff's own admission, the individual defendants' conduct in no way affected her decision to leave her job.  *See* Analysis, Part I, *supra*.

The evidence clearly establishes that Plaintiff was satisfied with her job until April 24, 2002, the date of the massage incident, and that she believes that her decision to forego the neck massage is the reason she is no longer employed by Defendant Golden Peanut. Plaintiff's non-participation in the workplace massage therapy session, in her opinion, led to Barbara Loper assigning her extra cleaning duties; an assignment which Plaintiff contends failed to properly accommodate her back impairment.   Plaintiff offers no facts to support this claim.

The question for the Court is whether a reasonable jury based on the record before the Court could find that Defendant Golden Peanut imposed working conditions that were so intolerable that a reasonable person would have been compelled to resign.  The facts, taken in the light most favorable to Plaintiff, show no conditions, intolerable or otherwise, imposed by Defendants that compelled Plaintiff to resign.  Therefore  the Court **GRANTS** Defendants' motion for summary judgment with regard to the constructive discharge claim.

## <u>CONCLUSION</u>

Defendants' motion for summary judgment on Plaintiff's Title VII and ADA

discrimination claims; and the constructive discharge claims arising out of those claims

(Doc. 42) is **GRANTED in PART and DENIED in PART**.

Remaining for trial is Plaintiff's Title VII claim of sexual harassment with respect to

the existence of a hostile work environment.

**SO ORDERED**, this   29th   day of September, 2005.

    /s/W. Louis Sands

**W. LOUIS SANDS, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**